******************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

KATHLEEN JACQUES *v.* COMMISSIONER OF
ENERGY AND ENVIRONMENTAL
PROTECTION ET AL.
(AC 42609)

Lavine, Suarez and Devlin, Js.*

*Syllabus*

The plaintiff property owner sought a permanent injunction against the
defendants, the Commissioner of Energy and Environmental Protection
and the Secretary of the Office of Policy and Management, prohibiting
them from taking further action in the redevelopment of a state park
and for an order precluding them from denying her alleged statutory
(§ 22a-16) right to intervene in public hearings related to the redevelop-
ment project. The plaintiff filed a complaint with the Department of
Energy and Environmental Protection, seeking to intervene in the public
hearings on the project pursuant to the applicable statute (§ 22a-19) and
to have the opportunity to present expert witnesses on her behalf in
opposition to the conclusions of the environmental impact evaluation,
as well as seeking to cross-examine the department's witnesses and
provide rebuttal expert testimony. The department denied that there
was a proceeding in which the plaintiff could intervene. The plaintiff
brought an administrative appeal, in which she claimed, inter alia, that
the redevelopment plan would have irreversible environmental impacts
on the area and, because her property was close to the park, the redevel-
opment would affect her special personal or legal interests. The trial
court subsequently dismissed the action on the ground of sovereign
immunity. *Held*:
1. The plaintiff could not prevail on her claim that the trial court erred in
   determining that she failed to allege facts sufficient to establish her
   statutory standing under § 22a-16, as her complaint failed to articulate
   a colorable claim of unreasonable pollution, impairment, or destruction
   of the environment; the complaint contained only two causes of action,
   alleging that each defendant violated § 22a-16, and the complaint's focus
   was entirely on how the plaintiff's rights were violated when the depart-
   ment denied her petition for intervention, and alleged a procedural
   violation without alleging facts that, if proven, would support a finding
   that this violation would unreasonably pollute, impair, or destroy the
   environment.
2. The trial court applied the proper rule of law when it construed the factual
   allegations in the complaint; contrary to the plaintiff's claim, the court
   did not state that the complaint failed to make out a "prima facie case,"
   as opposed to a colorable claim, instead, the court used "prima facie"
   as a descriptive phrase that captured the type of allegation required to
   defeat sovereign immunity and to articulate that, at first glance, the
   complaint did not allege facts that, when viewed in the light most favor-
   able to the plaintiff, were sufficient to satisfy exceptions to sovereign
   immunity.
3. The trial court did not err in determining that the allegations of the
   complaint did not come within the exception to sovereign immunity for
   state actions alleged in violation of constitutional rights, as the public
   hearing in which the plaintiff sought to intervene was not a "proceeding"
   under § 22a-19, as that statute did not provide for intervention in the
   type of hearing at issue in the present case, it was within the department's
   discretion to reject the plaintiff's petition, and, even if the department
   wrongfully denied her petition, this action would not constitute a viola-
   tion of the plaintiff's constitutional rights because § 22a-19 did not create
   a constitutional right of intervention; moreover, the plaintiff did not
   specifically allege that her constitutional rights had been violated and the
   plaintiff's claims in her complaint were not of a constitutional magnitude
   alleging a violation of a fundamental right.
4. The plaintiff could not prevail on her claim that the trial court erred in
   holding that the allegations of her complaint did not come within the
   exception to sovereign immunity for a substantial allegation of wrongful
   conduct to promote an illegal purpose in excess of a state officer's

statutory authority: although her complaint alleged that the defendants improperly denied her petition for intervention in contravention of § 22a-19 and that they did so for an illegal purpose, the department had the authority to deny the plaintiff's petition for intervention on the ground that the public hearing was not a "proceeding" to which § 22a-19 applied, as § 22a-19 solely covers matters that are adversarial in nature, thus, the facts in the complaint did not support the claim that either of the defendants acted in excess of his statutory authority; moreover, the illegal purpose exception required the plaintiff to plead that the defendants' conduct was in excess of their statutory authority, regardless of whether she was required to allege that the defendants' conduct promoted an illegal purpose, and the plaintiff's claim still failed because the defendants did not act in excess of their statutory authority.

5. This court declined to reach the merits of the plaintiff's claim that the trial court erred when it ruled that the scoping process/review of the environmental impact evaluation was not a proceeding for purposes of intervention under § 22a-19, as the trial court did not address this issue when it dismissed the action, and, instead, based its decision on its determination that the doctrine of sovereign immunity barred the plaintiff's claim for relief: this court will not consider a claim that the trial court, in reaching its decision, did not address; moreover, even if this court reached the merits of the this claim, it would fail as this court concluded that the hearing in which the plaintiff sought to intervene was not a proceeding for purposes of § 22a-19.

Argued October 13, 2020—officially released March 30, 2021

*Procedural History*

Action seeking, inter alia, a permanent injunction preventing the defendants from further implementing a master plan to redevelop a certain state park, and for other relief, brought to the Superior Court in the judicial district of New London, where the trial court, *S. Murphy, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Richard S. Cody*, with whom, on the brief, was *Michael P. Carey*, for the appellant (plaintiff).

*Lori D. DiBella*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellees (defendants).

*Opinion*

SUAREZ, J. The plaintiff, Kathleen Jacques, brought the action underlying this appeal against the defendants, Robert Klee, the Commissioner of Energy and Environmental Protection (commissioner), and Benjamin Barnes, Secretary of the Office of Policy and Management (secretary). The plaintiff sought, inter alia, a permanent injunction prohibiting the defendants from taking further action with respect to a plan to redevelop Seaside State Park in Waterford and an order precluding the defendants from "further denying . . . her statutory rights" to intervene in public hearings related to the redevelopment project. The plaintiff appeals from the judgment of the trial court granting the defendants' motion to dismiss on the ground of sovereign immunity and concluding that she failed to demonstrate that an exception to sovereign immunity applied. On appeal, the plaintiff claims that the court (1) erred in determining that she failed to allege facts sufficient to establish her statutory standing under General Statutes § 22a-16, (2) utilized an improper standard in construing the complaint's allegations under the sovereign immunity exceptions for state actions in violation of the plaintiff's constitutional rights and for state actions in excess of its authority, (3) erred when it concluded that the allegations of the complaint did not come within the exception to sovereign immunity for state actions alleged in violation of constitutional rights, (4) erred when it held that the allegations of the complaint did not come within the exception to sovereign immunity for a substantial allegation of wrongful conduct to promote an illegal purpose in excess of a state officer's statutory authority, and (5) erred when it ruled that the scoping process/review of the environmental impact evaluation was not a "proceeding" for purposes of intervention under General Statutes § 22a-19.[1] We affirm the judgment of the trial court.

The following procedural history is relevant to this appeal. The plaintiff commenced the underlying action on July 12, 2018. The two count complaint sought a permanent injunction prohibiting the Department of Energy and Environmental Protection (department) from further implementing its master plan to redevelop Seaside State Park, a thirty-two acre, state owned property in Waterford, and to enjoin the defendants "from further denying the plaintiff her statutory rights" under § 22a-19. Specifically, she challenged "the record of decision, opinion, findings of fact, and determination of environmental impact concerning the Seaside State Park Master Plan, prepared by [the department] and submitted to the . . . Office of Policy and Management on January 9, 2018, which [the Office of Policy and Management] subsequently reviewed and favorably determined on or about March 2, 2018 pursuant to statutory requirement . . . ."

The plaintiff alleged in her complaint that Seaside State Park is located on Long Island Sound and contains a number of buildings, including two former residences located approximately 300 feet and 550 feet from her home, respectively. She further alleged that the department intended to implement a "destination park concept" as its preferred alternative, which would involve the "restoration and reuse of existing historic buildings onsite for lodging and enhancement of the waterfront for ecological and recreational purposes . . . ." The plaintiff included in the complaint passages from the master plan that allegedly stated that "the buildings designated for lodging . . . would support up to approximately 63 rooms with associated services such as dining areas, conference space, a pool, fitness center and parking. . . . [I]f developers deem that 63 rooms are not sufficient to make the project economically viable, then [the department] will entertain proposals for up to 100 rooms of lodging."

The plaintiff alleged that the department looked at the potential environmental impacts of the proposed redevelopment and prepared an environmental impact evaluation with its findings.[2] At its discretion, the department scheduled a public hearing on the environmental impact evaluation to be held on July 31, 2017. [3] The plaintiff further alleged that on July 25, 2017, she filed with the department a verified complaint seeking to intervene in this public hearing pursuant to § 22a-19. In her complaint, she stated that by intervening, she expected to have the opportunity "to provide for evidentiary purposes the live testimony of one or more expert witnesses on her behalf in opposition to the findings, recommendations, conclusions and opinions in the [environmental impact evaluation] which came before the public hearing, and the right, as a party, to cross-examine [the department's] witnesses and to provide rebuttal expert testimony."

The plaintiff next alleged that on July 31, 2017, prior to the scheduled public hearing, the department e-mailed her a letter from the agency legal director denying that there was a "proceeding" in which she could intervene, and indicating that, "[l]ike all members of the public, [she] is afforded the opportunity to make comments on the [environmental impact evaluation]." The plaintiff stated in her complaint that, because she was prevented from participating as a party intervenor in the July 31, 2017 hearing, she was "unable to cross-examine [the department's] witnesses and/or to present her own experts."

The plaintiff further alleged that on January 9, 2018, pursuant to General Statutes § 22a-1e,[4] the department submitted the environmental impact evaluation and a record of its decision on the proposed action to the Office of Policy and Management for approval. She further alleged that on March 2, 2018, the secretary wrote

a letter to the commissioner in which he concluded that the environmental impact evaluation satisfied the requirements of the Connecticut Environmental Protection Act of 1971 (act), General Statutes § 22a-14 et seq.

The plaintiff's complaint alleged potential environmental impacts cited by the department in its environmental impact evaluation and alleged that, "[a]ccording to the [environmental impact evaluation], some of the . . . impacts [would] be irreversible." She alleged that "[n]oise resulting from lodging and related increased uses of the Seaside property . . . would be easily audible from [her] property, and from within her household." Therefore, she alleged, the department's proposed action would "specially and injuriously affect the special personal or legal interests of [the plaintiff]." In count one, the plaintiff alleged that the commissioner violated her rights as an intervenor under § 22a-19 when the department denied her petition for intervention and subsequently forwarded the environmental impact evaluation and record of decision to the Office of Policy and Management. In count two, the plaintiff alleged that the secretary violated her rights under § 22a-19 when he issued a finding that the environmental impact evaluation satisfied the requirements of the act, despite the department's alleged violation of her rights as a would be intervenor.

On September 6, 2018, the defendants moved to dismiss the plaintiff's cause of action in its entirety, pursuant to Practice Book § 10-30, on the ground that the court lacked subject matter jurisdiction on the basis of sovereign immunity. The plaintiff filed a memorandum of law in opposition to the motion to dismiss in which she relied on each of the following three exceptions to the doctrine of sovereign immunity. First, she argued that the legislature waived the state's sovereign immunity for her to challenge the department's environmental impact evaluation process when it enacted the act. Second, she argued that the allegations of the complaint demonstrated that she "had a colorable claim to a constitutional due process property interest in intervention." Third, she argued that the department acted in excess of its authority and in derogation of its duties under the act, specifically § 22a-19, when it denied her verified petition for intervention. Additionally, she argued that the environmental impact evaluation and scoping projects were "proceedings" for the purposes of § 22a-19, and, therefore, the department's decision to reject her petition "was legally incorrect and beyond [its] authority to make."

The defendants filed a reply in which they argued that the plaintiff failed to allege facts in her complaint sufficient to satisfy any of the three exceptions to sovereign immunity. They also contended that the public hearing on the environmental impact evaluation was not a "proceeding" for the purposes of intervention.

The court held a hearing on the motion to dismiss on October 22, 2018, during which the court ordered supplemental briefing. The parties submitted supplemental briefs on October 26, 2018.

The court granted the defendants' motion to dismiss and rendered judgment dismissing the action on December 17, 2018. The court issued a memorandum of decision on the same date. In its memorandum of decision, the court concluded, pursuant to the doctrine of sovereign immunity, that the plaintiff lacked standing. First, the court concluded that the allegations of "the plaintiff's complaint [fell] short of articulating a colorable claim of unreasonable pollution, impairment or destruction of the environment" as required by General Statutes § 22a-16 and, thus, "failed to establish statutory standing . . . ." (Internal quotation marks omitted.) Second, the court concluded that the allegations of the complaint "failed to establish standing by way of the exception to sovereign immunity where the plaintiff's constitutional rights have been violated." The court stated that there was "no mention of a constitutional violation anywhere in the complaint, nor [were] there any facts upon which the court [could] infer a constitutional violation." Third, the court concluded that the plaintiff's complaint "[failed] to allege facts showing prima facie that . . . any state officer committed wrongful conduct to promote an illegal purpose in excess of his or her statutory authority." Further, the court concluded that "the plaintiff's first and second causes of action [contained] nothing more than conclusory allegations concerning the defendants' conduct." The plaintiff filed a motion to reargue the motion to dismiss on January 7, 2019, which the court denied on January 28, 2019.

The plaintiff filed the present appeal on February 19, 2019. Additional procedural history will be set forth as necessary.

I

The plaintiff first claims that the court erred in determining that she failed to allege facts sufficient to establish her statutory standing under § 22a-16.[5] We disagree.

Our standard of review is well established. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . .

admits all facts which are well pleaded, invokes the existing record and must be decided on that alone.

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Citations omitted; internal quotation marks omitted.) *Stotler* v. *Dept. of Transportation*, 142 Conn. App. 826, 833–34, 70 A.3d 114 (2013), aff'd, 313 Conn. 158, 96 A.3d 527 (2014).

"[T]he sovereign immunity enjoyed by the state is not absolute. There are [three] exceptions . . . . The first exception . . . occurs when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; the second exception occurs when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights; and the third exception occurs when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citation omitted; internal quotation marks omitted.) *Jezouit* v. *Malloy*, 193 Conn. App. 576, 594–95, 219 A.3d 933 (2019). We will apply this same standard of review to parts II, III, and IV of this opinion, as these sections address the plaintiff's challenge to the court's granting of the defendant's motion to dismiss on the grounds of sovereign immunity.

As the court stated in its memorandum of decision, § 22a-16 "waives sovereign immunity as to actions for declaratory or equitable relief against the state and its agencies 'for the protection of the public trust in the air, water and other natural resources of the state from *unreasonable* pollution, impairment or destruction.' " (Emphasis in original.) "It is settled that the existence of statutory standing depends on whether the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute . . . . Under § 22a-16, standing . . . is conferred only to protect the natural resources of the state from pollution or destruction. . . . Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by any person [or entity] against any person [or entity], of

conduct resulting in harm to one or more of the natural resources of this state. . . . Although it is true, of course, that the plaintiff need not prove its case at [the pleading] stage of the proceedings . . . the plaintiff nevertheless must articulate a *colorable claim* of unreasonable pollution, impairment or destruction of the environment." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 432, 829 A.2d 801 (2003).

We note that the plaintiff did not cite § 22a-16 in her complaint and, instead, referenced only the act as a whole. The court, nevertheless, addressed the statutory exception claim under § 22a-16.[6] We will, therefore, review the facts alleged in the complaint to determine if the plaintiff made out a colorable claim under § 22a-16.

In its memorandum of decision, the court relied on *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 265 Conn. 428, a case in which a conservation organization brought an action under § 22a-16 seeking to bar the implementation of a municipal development plan based on alleged violations of federal, state, and local law. The organization's appeal to our Supreme Court focused on allegations in the complaint "(1) that the defendants failed to follow certain procedural requirements in adopting the development plan; and (2) that the plan called for demolition without consideration of 'feasible and prudent alternatives.' " Id., 431. In concluding that the organization failed to establish statutory standing under § 22a-16, our Supreme Court stated that "the allegations of the complaint do not give rise to an inference of unreasonable harm to the environment because it is not evident how the defendants' failure to follow certain procedural requirements in adopting the development plan or to consider alternatives to the demolition of buildings in the Fort Trumbull area is likely to cause such harm." Id., 433. The court noted: "The complaint . . . expressly challenges both the legality of the process pursuant to which the defendants adopted the development plan and the necessity of the demolition component of the plan. These allegations, however, provide no indication as to how or why the adoption and implementation of the development plan is likely to cause unreasonable harm to the environment." Id., 432. Our Supreme Court concluded that the plaintiff had not articulated a colorable claim of unreasonable pollution, impairment, or destruction of the environment. Id., 433. Therefore, under *Fort Trumbull Conservancy, LLC*, when a party seeks to intervene in a proceeding based on allegations that the department did not follow the act's procedural requirements, it must also allege in the complaint how the alleged procedural violations could result in unreasonable harm to the environment. See id., 432.

In the present case, the plaintiff argues that *Burton*

v. *Commissioner of Environmental Protection*, 291 Conn. 789, 970 A.2d 640 (2009) (*Burton I*),[7] controls, and that the court erred in relying on *Fort Trumbull Conservancy, LLC*. In *Burton I*, the plaintiff, Nancy Burton, moved to intervene, pursuant to § 22a-19, in the department's permit renewal proceeding for an electric generating facility powered by two nuclear power generating units. Id., 793–94. The hearing officer allowed Burton to intervene for the purpose of raising some of the claims set forth in her motion for intervention, but excluded her claims concerning the department's alleged collusion with the facility operator and past illegal activities, as well as the potential impact of radioactive waste from the facility. Id., 795. Burton brought an action in Superior Court, alleging in her complaint, among other things, that the hearing officer had a conflict of interest and was biased. Id., 796. She further alleged that the department had prejudged her permit renewal application and had declined to consider the environmental impact of the facility's discharge water. Id. The complaint also contained allegations pertaining to how the facility's operations would pollute the surrounding waters and harm marine life. Id. The defendants moved to dismiss the action, and the trial court granted the motion, concluding that, "because the conduct that [Burton] alleged in her complaint arose out of a permitting proceeding, [she] lacked standing." Id., 797. Burton appealed.

On appeal, the defendants in *Burton I* argued that Burton lacked standing under § 22a-16 because her claims were premised entirely on flaws in the permitting process. Id., 805. In reversing the judgment of the trial court, our Supreme Court stated that the complaint contained specific allegations of harm to the environment, and specifically alleged that the existing permit renewal proceeding was inadequate to protect the rights recognized by the act because the hearing officer was biased and the department had prejudged the matter. Id., 804–805. The court reasoned that, "[i]n essence, therefore, [Burton] [alleged] that, if the hearing officer and the department had fairly and impartially conducted the permit renewal proceeding, they would not have allowed [the facility owner] to continue [the facility's] operations under the emergency authorization or issued the tentative decision to renew the discharge permit because the impact of the operations on the marine life in the neighboring bodies of water is more harmful than that permitted by the applicable regulatory scheme." Id., 805. Thus, although Burton's claims were premised on flaws in agency process, the complaint sufficiently alleged facts that would support a finding that the flawed process could potentially cause harm to the environment. See id., 807 ("we have recognized that the mere fact that conduct comes within the scope of a statutory permitting scheme does not preclude a claim under the act if, as in the present case, the plaintiff

makes a colorable claim that the conduct will cause unreasonable pollution").

In the present case, the complaint alleges one cause of action against the commissioner and one cause of action against the secretary. These causes of action allege only that each defendant violated § 22a-19, and focus entirely on how the plaintiff's rights were violated when the department denied her petition for intervention. The complaint merely restates findings contained in the environmental impact evaluation and it fails to articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment. As in *Fort Trumbull Conservancy, LLC*, the complaint alleges a procedural violation without alleging facts that, if proven, would support a finding that this violation would unreasonably pollute, impair, or destroy the environment. We will not speculate as to how the defendants' alleged wrongdoing confers standing on the plaintiff under § 22a-16. See *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 502, 400 A.2d 726 (1978) ("No pleading [in this case] . . . alleges any specific conduct as to what is claimed to constitute any alleged unreasonable pollution, impairment or obstruction of any natural resource. We cannot supply such an omission."). Accordingly, we conclude that the court did not err in determining that the allegations in the plaintiff's complaint did not make out a colorable claim under § 22a-16.

## II

The plaintiff next claims that the court utilized an improper standard in construing the complaint's allegations under the sovereign immunity exceptions for state actions in violation of the plaintiff's constitutional rights and state actions in excess of its authority. We disagree.

In its memorandum of decision granting the defendants' motion to dismiss, the trial court set forth the following standard: "A motion to dismiss shall be used to assert lack of jurisdiction over subject matter. Practice Book § 10-30 (a) (1). A motion to dismiss tests whether, based on the record, the court has jurisdiction. *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 626, 79 A.3d 60 (2013). 'When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.' . . . *Stroud* v. *Mid-Town Tire & Supply, Inc.*, 146 Conn. App. 806, 811–12, 81 A.3d 243 (2013). In their motion, the defendants asserted sovereign immunity as the ground for the court's lack of subject matter jurisdiction. The doctrine of sovereign immunity implicates subject matter jurisdiction and, thus, is grounds for granting a motion to dismiss. *Housatonic*

*Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 274, 21 A.3d 759 (2011). Sovereign immunity applies to the state and the state's officers. See *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711, 937 A.2d 675 (2007)."

In addition to our standard of review articulated in part I of this opinion, we note that "[t]he construction of a judgment is a question of law for the court, such that our review of the [plaintiff's] claim is plenary. As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment." (Internal quotation marks omitted.) *In re Jason B.*, 137 Conn. App. 408, 414, 48 A.3d 676 (2012).

The trial court construed the allegations of the plaintiff's complaint in light of the facts alleged with regard to the environmental impact evaluation and the defendants' conduct in approving the Seaside State Park master plan. In discussing the second and third exceptions to sovereign immunity,[8] the court stated: "The complaint fails to allege facts showing *prima facie* that the state or any of its officers violated the plaintiff's constitutional rights or that any state officer committed wrongful conduct to promote an illegal purpose in excess of his or her statutory authority." (Emphasis added.)

The plaintiff takes issue with the court's use of the term "prima facie," arguing that the court required the allegations of the complaint to make out a "prima facie case," rather than a colorable claim, as required by *Burton I*. She further argues that "a prima facie showing is an evidential matter," which "can involve the establishment of a legally required rebuttable presumption or a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." She cites the Black's Law Dictionary definition of "prima facie case" to support this argument.

When used as an adverb, Black's Law Dictionary defines "prima facie" as: "At first sight; on first appearance but subject to further evidence or information." Black's Law Dictionary (11th Ed. 2019) p. 1441. When used as an adjective, Black's Law Dictionary defines the term as: "*Sufficient* to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it may later be proved to be untrue." (Emphasis added.) Id. Our Supreme Court similarly has described "prima facie evidence" as "evidence which, if credited, is *sufficient* to establish the fact or facts which it is adduced to prove." (Emphasis added; internal quotation marks omitted.) *Rapuano* v. *Oder*, 181 Conn. 515, 520, 436 A.2d 21 (1980). Phrases such as "prima facie" and "sufficient" do not describe standards that are qualitatively different from the phrase "substantial allegation,"

which is used in cases such as *Jezouit* v. *Malloy*, supra, 193 Conn. App. 595.

In the present case, the court did not state that the complaint failed to make out a "prima facie case." Instead, the court used "prima facie" as a descriptive phrase that captures the type of allegation required to defeat sovereign immunity. In other words, the court used "prima facie" to articulate that, *at first glance*, the complaint did not allege facts that, when viewed in the light most favorable to the plaintiff, were *sufficient* to satisfy the second and third exceptions to sovereign immunity. Accordingly, on the basis of our construction of the court's decision, we conclude that the court applied the proper rule of law when it construed the factual allegations in the complaint according to the standard it articulated earlier in the decision.

III

Next, the plaintiff claims that the court erred when it concluded that the allegations of the complaint did not come within the exception to sovereign immunity for state actions alleged in violation of constitutional rights. We disagree.

We begin by noting that, in her complaint, the plaintiff did not specifically allege that her constitutional rights had been violated. The court concluded in its memorandum of decision granting the defendants' motion to dismiss that the complaint did not allege "facts upon which the court [could] infer a constitutional violation." After a careful review of the complaint, we conclude that the plaintiff's claims are not of constitutional magnitude alleging the violation of a fundamental right.

This court has noted that "[t]he procedural right involved in administrative proceedings properly is described as a right to fundamental fairness, as distinguished from the due process rights implicated in judicial proceedings." *Burton* v. *Connecticut Siting Council*, 161 Conn. App. 329, 341 n.12, 127 A.3d 1066 (2015), cert. denied, 320 Conn. 925, 133 A.3d 459 (2016); see also *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 607 n.6, 942 A.2d 511 ("The right to fundamental fairness in administrative proceedings encompasses a variety of procedural protections, including the right to adequate notice. . . . [Our Supreme Court at times has] characterized these procedural protections as due process rights. . . . Although the due process characterization, at first blush, suggests a constitutional source, there is no discussion in these cases of a property interest in terms of constitutional due process rights. These decisions are, instead, based on a line of administrative law cases and reflect the development, in Connecticut, of a common-law right to due process in administrative hearings." (Citation omitted; internal quotation marks omitted.)), cert. denied, 289 Conn. 901, 957 A.2d 871 (2008). Additionally, we note that the

United States Court of Appeals for the Second Circuit has held that the right to intervene under § 22a-19 is not a protected property interest under the federal constitution. *West Farms Associates* v. *State Traffic Commission*, 951 F.2d 469, 472 (2d Cir. 1991).[9]

On appeal, the plaintiff argues that § 22a-19 creates a right of intervention, and that the department had no legal discretion but to grant her petition for intervention. She contends that, in enacting this statute, the legislature conferred upon intervening citizens due process rights, which vest when citizens file verified petitions for intervention with the department. To support this assertion, she cites *Polymer Resources, Ltd.* v. *Keeney*, 32 Conn. App. 340, 348–49, 629 A.2d 447 (1993), which states: "As we have noted, § 22a-19 (a) compels a trial court to permit intervention in an administrative proceeding or judicial review of such a proceeding by a party seeking to raise environmental issues upon the filing of a verified complaint. The statute is therefore not discretionary." We note that in *Zoning Commission* v. *Fairfield Resource Management, Inc.*, 41 Conn. App. 89, 104–105, 674 A.2d 1335 (1996), this court concluded that the decision in *Polymer Resources, Ltd.*, was not legally viable because in its companion case, *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 630 A.2d 1304 (1993), our Supreme Court remanded the case to the trial court with direction to render judgment dismissing the complaint. Thus, the case was not persuasive authority when this court rendered its decision. *Zoning Commission* v. *Fairfield Resource Management, Inc.*, supra, 104. Accordingly, the plaintiff's reliance on this case is misplaced.

In the present case, for the reasons set forth in part IV of this opinion, the public hearing in which the plaintiff sought to intervene was not a "proceeding" under § 22a-19. Therefore, because the statute does not provide for intervention in the type of hearing at issue in the present case, it was within the department's discretion to reject the plaintiff's petition. Furthermore, even if the department wrongfully denied her petition, this action would not constitute a violation of the plaintiff's constitutional rights because § 22a-19 does not create a constitutional right of intervention. Accordingly, we conclude that the court did not err in determining that the allegations of the complaint did not come within the exception to sovereign immunity for alleged violations of constitutional rights.

### IV

The plaintiff next claims that the court erred when it held that the allegations of the complaint did not come within the exception to sovereign immunity for a substantial allegation of wrongful conduct to promote an illegal purpose in excess of a state officer's statutory authority. In this regard, she argues that the complaint alleged that the defendants improperly denied her peti-

tion for intervention in contravention of § 22a-19 *and* that they did so for an illegal purpose. We disagree.

"For a claim under the third exception [regarding illegal purpose], the [plaintiff] must do more than allege that the defendants' conduct was in excess of their statutory authority; [she] also must allege or otherwise establish facts that reasonably support those allegations. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citation omitted; internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 721.

To determine, as the plaintiff argues, whether the defendants acted wrongfully in denying her petition for intervention, it is first necessary to determine whether the public hearing in which the plaintiff sought to intervene was a "proceeding" for the purposes of § 22a-19a. For the reasons we set forth herein, we conclude that the public hearing was not a "proceeding" to which the statute applied. Thus, the department had the authority to deny the plaintiff's petition for intervention on this ground.

"When a case presents only questions of law, an administrative agency's legal determinations are not entitled to any special deference, unless they previously have been subject to judicial review or to a governmental agency's time-tested interpretation. . . . Because statutory interpretation is a question of law, our review is de novo." (Citations omitted; internal quotation marks omitted.) *Planning & Zoning Commission* v. *Freedom of Information Commission*, 316 Conn. 1, 9, 110 A.3d 419 (2015).

General Statutes § 22a-1d governs review of environmental impact evaluations and provides in relevant part: "The sponsoring agency preparing an environmental impact evaluation shall hold a public hearing on the evaluation if twenty-five persons or an association having not less than twenty-five persons requests such a hearing within ten days of the publication of the notice in the Environmental Monitor." Pursuant to § 22a-1a-9 of the Regulations of Connecticut State Agencies, if twenty-five persons do not request a public hearing, the department may still hold one "at its discretion." This regulation requires the department to publish notice of the availability of environmental impact evaluations that includes information about the public comment period. Regs., Conn. State Agencies § 22a-1a-9 (a) (4). If there is no public hearing planned, the department must keep the public comment period open for at least forty-five days after the date that it publishes the notice. Id. If the department holds a public hearing, the department must keep the public comment period open for at least five days after the public hearing, or for at least forty-five days after the publication date of the notice,

whichever is later. Id.

Section 22a-19 (a) (1) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

In *Zoning Commission* v. *Fairfield Resources Management, Inc.*, supra, 41 Conn. App. 89, this court applied principles of statutory construction to determine whether an association of property owners and other individuals could utilize § 22a-19 to intervene in an enforcement action brought by a town zoning commission in Superior Court. This court held that the parties should have been granted intervenor status because the enforcement action fell within the "other proceeding" category of the statute. Id., 97–98. It stated that "the words 'administrative' and 'licensing' as used in § 22a-19 (a) are directed to agency proceedings." Id., 115. The court then concluded that "[i]f 'other proceedings' is to be given meaning in § 22a-19 (a), it can refer *only to court proceedings* . . . ." (Emphasis added.) Id.

In the present case, the public hearing on the environmental impact evaluation was not a licensing proceeding, nor was it a court proceeding that would fall under the "other proceedings" category of § 22a-19. Therefore, we must determine whether the department's public hearing on the environmental impact evaluation constituted an "administrative proceeding" under the statute.

Neither the act nor the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., defines the terms "proceeding" or "administrative proceeding." In their supplemental briefs on the defendants' motion to dismiss, both parties acknowledged that Connecticut courts have yet to define the word "proceeding" in the context of § 22a-19. Thus, we must interpret the term "proceeding" as it is used in the statute.

We begin by setting forth the guiding principles of statutory interpretation. General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." "The test to determine ambiguity is

whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Brown*, 310 Conn. 693, 702, 80 A.3d 878 (2013).

"In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Efstathiadis* v. *Holder*, 317 Conn. 482, 488, 119 A.3d 522 (2015).

Merriam-Webster's Collegiate Dictionary defines "proceeding" as a "legal action. . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 990. Black's Law Dictionary provides more detail, defining a "proceeding" as: "1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing. 5. Bankruptcy. A particular dispute or matter arising within a pending case—as opposed to the case as a whole." Black's Law Dictionary (11th Ed. 2019) p. 1457. It also defines "administrative proceeding" as: "A hearing, inquiry, investigation, or trial before an administrative agency, [usually] adjudicatory in nature but sometimes quasi-legislative." Id., p. 56. Each of these definitions reveals that "proceeding" refers to a matter that takes place in court as part of a lawsuit or criminal case, or an adversarial[10] matter before an administrative body.[11]

Section 1-2z next directs us to look at the relationship between § 22a-19 and other statutes. The term "proceeding" is only used in one other section of the act. General Statutes § 22a-18, which discusses the powers of reviewing courts, mentions the term in two instances. Subsection (b) of § 22a-18 provides in relevant part: "If administrative, licensing or other such proceedings are required or available to determine the legality of the defendant's conduct, the court in its discretion may remand the parties to such proceedings. . . ." Subsection (d) of § 22a-18 provides: "Where, as to any administrative, licensing or other proceeding, judicial review thereof is available, the court originally taking jurisdiction shall maintain jurisdiction for purposes of judicial review." When read alongside the portion of the subsection (b) of § 22a-18 that states "to determine the legality of the defendant's conduct," the term "administrative proceeding" appears to reference proceedings before an agency that are adjudicatory in nature.

The General Statutes define "proceeding" in the Business Corporation Act, General Statutes § 33-600 et seq.,

and the Revised Nonstock Corporation Act, General Statutes § 33-1000 et seq., both of which provide: " 'Proceeding' includes civil suit and criminal, administrative and investigatory action." General Statutes § 33-602 (27); General Statutes § 33-1002 (25). Additionally, our Penal Code defines an "official proceeding" as "any proceeding held or which may be held before any legislative, judicial, administrative or other agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner or notary or other person taking evidence in connection with any proceeding." General Statutes § 53a-146 (1).

Our analysis leads us to conclude that the term "proceeding," as it is used in § 22a-19, solely covers matters that are adversarial in nature. The dictionary definitions of the term, as well as its use in other statutes, demonstrate that a proceeding is something that takes place before a tribunal or decision maker, with a resulting decision that is based on principles of law, statutes, or agency regulations. Moreover, it involves basic due process rights such as a right for interested parties to be heard, present evidence, and to argue on their behalf.

Furthermore, the legal concept of intervention inherently relates to participation in an adjudicatory proceeding. See, e.g., Black's Law Dictionary (11th Ed. 2019) p. 983 ("Intervention" is defined as: "1. The entry into a lawsuit by a third party who, despite not being named a party to the action, has a personal stake in the outcome. . . . The intervenor sometimes joins the plaintiff in claiming what is sought, sometimes joins the defendant in resisting what is sought, and sometimes takes a position adverse to both the plaintiff and the defendant. . . . 2. The legal procedure by which such a third party is allowed to become a party to the litigation. . . ."). Without intervention, parties would not otherwise have the opportunity to be heard. In a public hearing, on the other hand, there is no need to intervene because an agency's purpose in holding one is specifically to gather input from members of the public.

Here, the department was not mandated by statute to hold a hearing, but did so at its discretion to solicit public comment. Even if it did not hold this hearing, the plaintiff would have had the opportunity to submit written comments to the department.[12] The plaintiff, however, alleged in her complaint that by filing a verified pleading for intervention under § 22a-19, she expected "to provide for [evidentiary] purposes the live testimony of one or more expert witnesses on her behalf in opposition to the findings, recommendations, conclusion and opinions in the [environmental impact evaluation] which came before the public hearing, and the right, as a party, to cross-examine [the department's] witnesses and to provide rebuttal expert testimony." These procedures are characteristics of an adversarial process, rather than an agency-led hearing to solicit

public comment.

The plaintiff cites *Keeney* v. *Fairfield Resources, Inc.*, 41 Conn. App. 120, 674 A.2d 1349 (1996), in support of her claim that the department itself has adopted an expansive interpretation of "proceeding" under § 22a-19. In that case, however, the plaintiffs sought to intervene in an enforcement action brought by a zoning commission in the Superior Court. Id., 121. The claim involved conduct by the defendants that allegedly violated a condition of a permit issued by the department, along with actions taken by the defendants without obtaining the required permits from the department. Id., 122. Not only does *Keeney* involve a matter entirely different from a public hearing, it is also a companion case to *Zoning Commission* v. *Fairfield Resources Management, Inc.*, supra, 41 Conn. App. 115, which limited the meaning of "other proceedings" to court proceedings. Thus, *Keeney* has no bearing on nonadjudicatory matters conducted by the department outside of court.

Moreover, the plaintiff does not point to any case in which a Connecticut court has permitted intervention in a hearing similar to the one at issue here. Interpreting the statute in the way the plaintiff requests would yield unworkable results by giving members of the public the right to turn public hearings into trial like proceedings, which would impose additional procedures beyond those required by the act and the department's regulations.

In light of our analysis, we conclude that the department had the authority to deny the plaintiff's petition for intervention on the ground that the public hearing was not covered by § 22a-19 because it was not a "proceeding." Accordingly, the facts alleged in the complaint do not support the claim that either defendant acted in excess of his statutory authority.

In her brief to this court, the plaintiff also argues that the trial court improperly relied on its conclusion that the plaintiff did not adequately plead that the defendants acted with an illegal purpose. She attempts to demonstrate that because her complaint sought equitable relief, and not money damages, she did not need to prove the "illegal purpose" prong of this exception to sovereign immunity. The illegal purpose exception nonetheless requires a plaintiff to plead that the defendants' conduct was in excess of their statutory authority, regardless of whether she was required to allege that the defendants' conduct promoted an illegal purpose. Thus, even if the plaintiff's argument were correct, her claim would still fail because we already have concluded that the defendants did not act in excess of their statutory authority. Therefore, the plaintiff's claim fails.

V

Finally, the plaintiff claims that the court "erred when

it ruled that the scoping process/review of the [environmental impact evaluation] was not a 'proceeding' for purposes of intervention under § 22a-19 . . . ." We decline to reach the merits of this claim.

As the defendants note, the court did not address this issue when it dismissed the action. Instead, the court based its decision on its determination that the doctrine of sovereign immunity barred the plaintiff's claim for relief. We will not consider a claim that the court, in reaching its decision, did not address. See, e.g., *State* v. *Carrasquillo*, 191 Conn. App. 665, 692–93, 216 A.3d 782 (court unable to review ruling that does not exist), cert. denied, 333 Conn. 930, 218 A.3d 69 (2019); *Lane* v. *Cashman*, 179 Conn. App. 394, 416, 180 A.3d 13 (2018) (court declined to review defendants' claim about ruling that trial court did not make). Furthermore, even if we reached the merits of this claim, it would fail for the reasons set forth in part IV of this opinion, in which we concluded that the hearing in which the plaintiff sought to intervene was not a proceeding for purposes of § 22a-19.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] For convenience, we have reordered the plaintiff's claims as they are set forth in her brief so that we first address the claims related to sovereign immunity.

[2] General Statutes § 22a-1b governs evaluations by state agencies of actions affecting the environment. Subsection (b) details the public scoping process that the department was required to follow before it prepared of the environmental impact evaluation. Section 22a-1b (b) (1) provides: "Each sponsoring agency shall, prior to a decision to prepare an environmental impact evaluation pursuant to subsection (c) of this section for an action which may significantly affect the environment, conduct an early public scoping process." An agency must initiate the early public scoping process in accordance with § 22a-1b (b) (2).

Section 22a-1b (b) (3) provides in relevant part that members of the public "may submit comments on the nature and extent of any environmental impacts of the proposed action" for the thirty days following the agency's publication of the notice of the early public scoping process. Section 22a-1b (b) (4) provides in relevant part: "A public scoping meeting shall be held at the discretion of the sponsoring agency or if twenty-five persons or an association having not less than twenty-five persons requests such a meeting . . . ."

After the agency identifies the environmental impacts of its proposed action through the scoping process, it must prepare an environmental impact evaluation in accordance with the requirements of § 22a-1b (c). General Statutes § 22a-1d (a) requires that the agency make the environmental impact evaluation available for public inspection and comment. As we note in footnote 3 of this opinion, the agency may be required to hold a public hearing on the environmental impact evaluation or do so at its discretion in order to solicit additional public comment.

[3] General Statutes § 22a-1d (a) provides in relevant part that an agency "shall hold a public hearing on the [environmental impact] evaluation if twenty-five persons or an association having not less than twenty-five persons requests such a hearing . . . ." If an agency does not receive such a request, the agency "may hold, *at its discretion*, a public hearing on an environmental impact evaluation no less than thirty (30) days after the publication of the notice of availability. . . . If a public hearing is held, the public comment period shall remain open for at least five (5) days following the close of the public hearing or until the date specified in the notice of availability of the environmental impact evaluation published in the Environ-

mental Monitor, whichever is later." (Emphasis added.) Regs., Conn. State Agencies § 22a-1a-9 (c).

In an affidavit submitted to the court in support of the defendants' motion to dismiss, Thomas Tyler, Director of the State Parks Division of the Bureau of Outdoor Recreation within the department, stated that the department "did not receive the requisite petition by twenty-five or more people (or from an organization containing twenty-five members or more) pursuant to . . . § 22a-1d while conducting the [environmental impact evaluation] for Seaside State Park. Consequently, [the department] was not required to hold the nonadjudicative, informational public hearing for the Seaside [environmental impact evaluation] on July 31, 2017 at the Waterford Town Hall, but [the department] did so anyway based on public interest."

[4] General Statutes § 22a-1e provides: "The Office of Policy and Management shall review all environmental impact evaluations together with the comments and responses thereon, and shall make a written determination as to whether such evaluation satisfies the requirements of this part and regulations adopted pursuant thereto, which determination shall be made public and forwarded to the agency, department or institution preparing such evaluation. Such determination may require the revision of any evaluation found to be inadequate. Any member of the Office of Policy and Management which has prepared an evaluation and submitted it for review shall not participate in the decision of the office on such evaluation. The sponsoring agency shall take into account all public and agency comments when making its final decision on the proposed action."

[5] General Statutes § 22a-16 provides: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

[6] In its memorandum of decision on the defendants' motion to dismiss, the court stated: "Although the plaintiff does not specifically cite § 22a-16 standing alone, the plaintiff does reference the Connecticut Environmental Protection Act at §§ 22a-14 through 22a-20 in claiming standing. . . . Read broadly, this paragraph, albeit a stretch, could be construed as an assertion of a claim under § 22a-16, wherefore this court will address the statutory waiver exception." We agree with the court's interpretation of the plaintiff's complaint as seeking relief under § 22a-16.

[7] In addition to *Burton I*, our Supreme Court has decided two other *Burton* matters. See *Burton* v. *Dept. of Environmental Protection*,     Conn.     ,     A.3d     (2021) (*Burton III*); *Burton* v. *Commissioner of Environmental Protection*, 323 Conn. 668, 150 A.3d 666 (2016) (*Burton II*). The plaintiff relies only on *Burton I* in her appellate brief.

We note that our Supreme Court recently decided *Burton III*, in which it briefly discusses a plaintiff's rights under § 22a-19. In *Burton III*, supra,     Conn.     , Burton argued, among other things, that "the administrative [licensing] proceeding was inadequate because the hearing officer precluded certain claims on which she sought to intervene." Although *Burton III* addressed the department's discretion under § 22a-19, this discussion does not impact our analysis in the present case. First, in *Burton III*, Burton intervened in a licensing proceeding, which, for the reasons set forth in part IV of this opinion, is distinguishable from the purported public hearing at issue in the present case. Second, in *Burton III*, the court focused on the hearing officer's discretion to preclude certain claims after Burton already had intervened in the department's proceeding. The present case, on the other hand, concerns whether the department has the discretion to preclude someone from intervening at all.

[8] To reiterate, "the second exception [to sovereign immunity] occurs when an action seeks declaratory or injunctive relief on the basis of a substantial

claim that the state or one of its officers has violated the plaintiff's constitutional rights; and the third exception occurs when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Internal quotation marks omitted.) *Jezouit* v. *Malloy*, supra, 193 Conn. App. 595.

[9] "Federal case law, particularly decisions of the United States Court of Appeals for the Second Circuit . . . can be persuasive in the absence of state appellate authority . . . ." *Designs for Health, Inc.* v. *Miller*, 187 Conn. App. 1, 11 n.8, 201 A.3d 1125 (2019). In her appellate brief, the plaintiff does not cite legal authority for the proposition that § 22a-19 creates a constitutional right of intervention in proceedings by the department. We are unaware of any state appellate authority addressing whether such a right exists. The decision of the Second Circuit Court of Appeals is, therefore, instructive.

[10] In *State* v. *Anonymous*, 30 Conn. Supp. 302, 304–307, 312 A.2d 715 (1973), the Superior Court determined that the issuance of a bench warrant was not a "proceeding" within the meaning of General Statutes § 54-41*l*, Connecticut's wiretap statute. In reaching this determination, the court cited federal cases in which courts concluded that under a similar federal wiretap statute, the word "proceeding" was limited to "adversary-type hearings." Id., 305. We find this case to be persuasive in addition to our textual analysis.

[11] Black's Law Dictionary includes the term "hearing" in both of its definitions, which suggests that public hearings on environmental impact evaluations could fall under the umbrella of "proceedings." However, when read within the context of the definitions as a whole, it is apparent that "hearing" references a single event that is part of a larger legal action against a particular defendant, such as a hearing on a motion, rather than a public hearing to solicit comments on a proposed agency action.

[12] In fact, the plaintiff participated in the statutory environmental impact evaluation review process in multiple ways. In the affidavit referenced in footnote 2 of this opinion, Tyler attested that the plaintiff made "seven submissions of written or oral comments that were received into the [environmental impact evaluation] record and considered by the agency." He further attested that the department included in the record and considered the statements contained in the plaintiff's pleading for intervention.