FORT TRUMBULL CONSERVANCY, LLC *v.*
CITY OF NEW LONDON ET AL.
(SC 16661)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued February 13, 2002—officially released August 19, 2003

*Scott W. Sawyer*, for the appellant (plaintiff).

*Edward B. O'Connell*, for the appellee (defendant New London Development Corporation).

*William J. Prensky*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, for the appellee (defendant department of economic and community development).

*Opinion*

PALMER, J. The sole issue raised by this appeal is whether the plaintiff, Fort Trumbull Conservancy, LLC, has alleged facts sufficient to establish standing to bring this action against the defendants, the city of New London (city), the New London redevelopment agency (redevelopment agency), the New London Development Corporation (corporation) and the state department of economic and community development (department), seeking to bar them from, inter alia, implementing a municipal development plan (development plan) in the Fort Trumbull area of New London. The trial court, *Hon. D. Michael Hurley*, judge trial referee, granted the defendants' motions to dismiss the plaintiff's complaint for lack of standing and rendered judgment thereon after concluding that the plaintiff had failed to allege facts sufficient to demonstrate either statutory or classical aggrievement. On appeal, the plaintiff contends that the trial court improperly granted the defendants' motions to dismiss because the allegations of the complaint are adequate to establish both statutory aggrievement under General Statutes § 22a-16[1] and classical aggrievement. We reject the plaintiff's

[1] General Statutes § 22a-16, which is part of the state Environmental Protection Act of 1971, §§ 22a-14 through 22a-20, provides in relevant part: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain

claims and, therefore, affirm the judgment of the trial court.

The record reveals the following relevant facts. In May, 1998, the New London city council designated the corporation, a private, nonprofit organization,[2] as the development agency for the city. Thereafter, the corporation applied to the department for financial support for a development plan for the Fort Trumbull area of New London. Among other things, the development plan called for the condemnation of property and demolition of buildings located in that area. After performing an environmental impact assessment, the department determined that the development plan could have a significant impact on the environment. The corporation therefore prepared an environmental impact evaluation in accordance with General Statutes (Rev. to 1997) § 22a-1b (b).[3] The department made the evaluation avail-

an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

[2] The corporation, which was founded in 1978, has the authority to raise and borrow money, acquire and sell property and otherwise engage in activities in furtherance of the general welfare of New London.

[3] General Statutes (Rev. to 1997) § 22a-1b (b) provides: "Each state department, institution or agency responsible for the primary recommendation or initiation of actions which may significantly affect the environment shall in the case of each such proposed action make a detailed written evaluation of its environmental impact before deciding whether to undertake or approve such action. All such environmental impact evaluations shall be detailed statements setting forth the following: (1) A description of the proposed action; (2) the environmental consequences of the proposed action, including direct and indirect effects which might result during and subsequent to the proposed action; (3) any adverse environmental effects which cannot be avoided and irreversible and irretrievable commitments of resources should the proposal be implemented; (4) alternatives to the proposed action, including the alternative of not proceeding with the proposed action; (5) mitigation

able for public inspection and comment[4] in accordance with General Statutes (Rev. to 1997) § 22a-1d.[5]

Following the public comment period, the department rendered a decision recommending that the proposed development plan be implemented. Thereafter, the state office of policy and management conditionally approved the environmental impact evaluation.[6] In January, 2000, the city and the redevelopment agency adopted the development plan. The corporation, acting on behalf of the city, subsequently condemned and demolished certain properties located in the Fort Trumbull area.

measures proposed to minimize environmental impacts; (6) an analysis of the short term and long term economic, social and environmental costs and benefits of the proposed action; (7) the effect of the proposed action on the use and conservation of energy resources; and (8) a description of the effects of the proposed action on sacred sites or archaeological sites of state or national importance. In the case of an action which affects existing housing, the evaluation shall also contain a detailed statement analyzing (A) housing consequences of the proposed action, including direct and indirect effects which might result during and subsequent to the proposed action by income group as defined in section 8-37aa and by race and (B) the consistency of the housing consequences with the state housing advisory plan adopted under section 8-37t. As used in this section, 'sacred sites' and 'archaeological sites' shall have the same meaning as in section 10-381."

[4] The public comment period commenced on November 10, 1998, and ended on December 28, 1998.

[5] General Statutes (Rev. to 1997) § 22a-1d provides in relevant part: "(a) Evaluations required by sections 22a-1a to 22a-1f, inclusive, and a summary thereof, including any negative findings, and environmental statements otherwise required and prepared subsequent to July 8, 1975, shall be submitted for comment and review to the Council on Environmental Quality, the Department of Environmental Protection, the Connecticut Historical Commission, the Department of Economic and Community Development in the case of a proposed action that affects existing housing, and other appropriate agencies, and to the town clerk of each municipality affected thereby, and shall be made available to the public for inspection and comment at the same time. . . ."

[6] The evaluation was approved subject to the condition that the department address certain issues relating to civil preparedness and flood plain and coastal management policies.

The plaintiff, a limited liability corporation formed, among other reasons, "to preserve, conserve, maintain and protect the continuity, historic importance, environment and legal status of [the Fort Trumbull] area," initiated this action in July, 2000, alleging numerous violations of federal, state and local law in connection with the creation, approval and implementation of the development plan.[7] The plaintiff sought various legal and equitable remedies, including declaratory relief and an injunction prohibiting the defendants from implementing the plan.[8]

The defendants filed motions to dismiss,[9] claiming that the plaintiff lacked standing to challenge their actions regarding the development plan. In particular, the defendants claimed that the plaintiff had failed to establish: (1) statutory aggrievement under § 22a-16 inasmuch as the complaint merely repeated the language of that statutory provision and did not set forth any facts indicating *how* the defendants' activities were likely to result in "unreasonable pollution, impairment or destruction" of the state's natural resources; General Statutes § 22a-16; and (2) classical aggrievement, inasmuch as the complaint contained insufficient allegations of any direct and specific injury. The trial court agreed with the defendants' claims and, therefore,

---

[7] In particular, the plaintiff alleged that the defendants' actions violated the fifth and fourteenth amendments to the United States constitution and article first, §§ 1, 10 and 11, of the Connecticut constitution, as well as various state statutory and regulatory provisions, the New London city charter and the directives of the New London city council.

[8] We note that the plaintiff sought, and ultimately obtained, a temporary restraining order enjoining the defendants from proceeding with the development plan. That order, however, subsequently was vacated. On appeal, the plaintiff claims that that order improperly was vacated. We do not address this issue in light of our conclusion that the court properly dismissed the plaintiff's complaint for lack of standing.

[9] The corporation and the department each filed a separate motion to dismiss and the city and redevelopment agency jointly filed a motion to dismiss.

granted the motions to dismiss and rendered judgment thereon dismissing the plaintiff's complaint.[10]

On appeal,[11] the plaintiff contends that the trial court improperly dismissed the complaint for lack of standing. We disagree.

"As a preliminary matter, we address the appropriate standard of review. If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction [implicates] the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdic-

---

[10] The trial court also determined, as an alternative ground for dismissing the complaint, that the plaintiff had failed to exhaust its administrative remedies. Because we conclude that the trial court properly dismissed the complaint for lack of standing, we need not address this alternative ground. We note, nevertheless, that this court recently has concluded that the state Environmental Protection Act of 1971, General Statutes §§ 22a-14 through 22a-20, "does not embody the exhaustion doctrine as a subject matter jurisdictional limit on the court's entertainment of an action under it." *Waterbury* v. *Washington*, 260 Conn. 506, 537, 800 A.2d 1102 (2002).

[11] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

tion cannot be waived by any party and can be raised at any stage in the proceedings.[12] . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, par-

---

[12] Thus, "[t]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." *Fink* v. *Golenbock*, 238 Conn. 183, 199 n.13, 680 A.2d 1243 (1996).

ticular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485–87, 815 A.2d 1188 (2003). With these principles in mind, we turn to the plaintiff's claims.

## I

The plaintiff first claims that it has standing under § 22a-16 because its complaint sets forth sufficient facts from which to infer that the defendants' activities created a " 'reasonable likelihood of unreasonable environmental harm.' " In support of this claim, the plaintiff refers to two allegations in its complaint: (1) that the defendants failed to follow certain procedural requirements in adopting the development plan; and (2) that the plan called for demolition without consideration of "feasible and prudent alternatives." The plaintiff maintains that these allegations are specific enough to support its claim of environmental harm, which otherwise is alleged only in conclusory terms. We are not persuaded.

General Statutes § 22a-16 provides broadly that "any person . . . [or] corporation . . . may maintain an action . . . for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ." Inasmuch as § 22a-16 affords standing to any person or corporation, the plaintiff indisputably comes within the statute's purview. Indeed, "[t]his court . . . has recognized no restriction on the class of persons with standing to seek

relief under § 22a-16." *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 262 Conn. 495–96.

Our inquiry into whether the plaintiff has standing under § 22a-16 is not complete, however. It is settled that the existence of statutory standing depends on "whether the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute . . . ." (Internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 160, 699 A.2d 142 (1997). Under § 22a-16, "standing . . . is conferred only to protect the natural resources of the state from pollution or destruction." *Belford* v. *New Haven*, 170 Conn. 46, 54, 364 A.2d 194 (1975). "Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by any person [or entity] against any person [or entity], of conduct resulting in harm to one or more of the natural resources of this state." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 262 Conn. 496. Although it is true, of course, that the plaintiff need not prove its case at this stage of the proceedings; see *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 57, 441 A.2d 68 (1981); the plaintiff nevertheless must articulate a *colorable claim* of unreasonable pollution, impairment or destruction of the environment. See *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 488–89.

The complaint in the present case expressly challenges both the legality of the process pursuant to which the defendants adopted the development plan and the necessity of the demolition component of the plan. These allegations, however, provide no indication as to how or why the adoption and implementation of the development plan is likely to cause unreasonable harm to the environment. It is well established that, in ruling on a motion to dismiss, the trial court "must take the

facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611, 793 A.2d 215 (2002). "A complaint does not sufficiently allege standing [however] by merely reciting the provisions of § 22a-16, but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." *Lewis* v. *Planning & Zoning Commission*, 49 Conn. App. 684, 692, 717 A.2d 246 (1998).

In the present case, the allegations of the complaint do not give rise to an inference of unreasonable harm to the environment because it is not evident how the defendants' failure to follow certain procedural requirements in adopting the development plan or to consider alternatives to the demolition of buildings in the Fort Trumbull area is likely to cause such harm. Nor is it apparent what the nature of any such harm might be. We will not speculate about how the actions of the defendants purportedly confer standing on the plaintiff under § 22a-16. See *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 502, 400 A.2d 726 (1978) ("No pleading . . . alleges any specific conduct as to what is claimed to constitute any alleged unreasonable pollution, impairment or obstruction of any natural resource. We cannot supply such an omission."). The plaintiff's complaint, therefore, falls short of articulating a colorable claim of unreasonable pollution, impairment or destruction of the environment.[13] Accordingly, we con-

---

[13] In *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 262 Conn. 480, a case involving, inter alia, the propriety of the issuance of permits for the demolition of the very properties at issue in the present action; see id., 482–83; we concluded that the allegations contained in the complaint filed in that case, "although somewhat vague," were sufficient to survive a motion to dismiss for lack of standing under § 22a-16. Id., 497. In *Alves*, the plaintiff alleged in its complaint that, "[t]he buildings, structures and properties

clude that the trial court properly determined that the plaintiff had failed to establish statutory standing under § 22a-16.

## II

The plaintiff also claims standing to maintain this action inasmuch as the allegations of its complaint demonstrate classical aggrievement. In support of this contention, the plaintiff claims that its members,[14] who reside in the area affected by the development plan, are "imminently threatened" by the implementation of that allegedly unconstitutional and otherwise unlawful plan. We reject the plaintiff's claim of classical aggrievement.

In evaluating the standing of an association, we have adopted the federal test for associational standing articulated in *Hunt* v. *Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). "Under that test, [a]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (Internal quotation marks omitted.) *Connecti-*

---

proposed for demolition, the supply of available energy resources to be consumed in the demolition process and the solid waste demolition by-products are protectible resources within the legislative policy and intent of [the act] and [t]he demolition of the buildings, structures and properties and disposal of the debris will unnecessarily and wastefully result in added and cumulative solid waste disposal burdens on existing solid waste facilities [within the state] and/or require expenditure of transportation energy for disposal at out-of-state facilities." (Internal quotation marks omitted.) Id., 496–97. As we have explained, the plaintiff failed to make even such vague allegations of environmental harm in the present case.

[14] The plaintiff alleged in its complaint that it "is comprised of . . . residents, homeowners and/or taxpayers who reside in . . . New London . . . within, adjacent to and/or affected by [the development plan] . . . ."

cut *Associated Builders & Contractors* v. *Hartford,* 251 Conn. 169, 185, 740 A.2d 813 (1999).

As we previously noted, the test for determining classical aggrievement requires a two part determination. "First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must . . . show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves,* supra, 262 Conn. 486–87.

Applying the foregoing principles, we conclude that the trial court properly determined that the plaintiff has failed to demonstrate classical aggrievement. Although the plaintiff alleges in its complaint that certain statutes are unconstitutional, both facially and as applied, and that the defendants' actions violated, inter alia, the constitutional and statutory rights of its members, the complaint contains no allegation of any specific and direct injury that the plaintiff's members have suffered or are likely to suffer as a result of these alleged constitutional infirmities and violations. In other words, the plaintiff has failed to demonstrate how its members have been "specially and injuriously affected" by the defendants' conduct. (Internal quotation marks omitted.) Id., 487.

The plaintiff claims that because the corporation, acting on behalf of the city, has eminent domain authority, the plaintiff's members are "imminently threatened by the defendants' implementation of the [development plan]" and that, consequently, they fear specific damages. In support of this assertion, the plaintiff relies on the following allegations contained in its complaint: (1) "the [corporation] and/or [the city] threatened the use of eminent domain prior to the approval of the [development plan] by the [redevelopment agency], [the] city

council and/or [the department]"; (2) "the [city], acting by and through the [corporation], has commenced demolition and condemnation proceedings on the basis that demolishing and taking the properties is allegedly necessary for developing, implementing and effectuating the [development plan]"; and (3) "the [corporation] . . . [has given formal] notice of [its] intent to demolish [certain] properties located in the [development plan] area and within . . . New London."

The complaint, however, contains no allegation that *any member of the plaintiff* was "imminently threatened" by the city's exercise of its eminent domain authority.[15] In the absence of such an allegation, the plaintiff has failed to satisfy the first prong of the associational standing test, namely, that the group's members would otherwise have standing to bring the action in their own right. Moreover, an allegation of a mere fear of "specific damages," without more, is too vague and speculative a claim of injury for the purpose of establishing classical aggrievement. Inasmuch as the complaint contains insufficient facts from which it reasonably may be inferred that any of the plaintiff's members have suffered or are likely to suffer any direct and specific injury as a result of the implementation of the development plan, the plaintiff's claim of classical aggrievement must fail.

We conclude, therefore, that the plaintiff has not established standing on the basis of either classical or statutory aggrievement. Thus, the trial court properly

[15] It may be that the property of one or more of the plaintiff's members is or is likely to be the subject of eminent domain proceedings arising out of the implementation of the development plan. The plaintiff, however, made no such allegation in its complaint. The mere fact that the corporation, acting on behalf of the city, has the *power* to take the property of the plaintiff's members by eminent domain, without more, is insufficient to establish the plaintiff's standing to bring an action to challenge the implementation of the development plan.

granted the defendants' motions to dismiss for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other justices concurred.