******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARTER OAK HEALTH CENTER, INC., ET AL.
*v.* VERONICA BARCELONA ET AL.
(AC 47732)

Suarez, Clark and Westbrook, Js.

*Syllabus*

The plaintiff nonstock corporation and five individual plaintiffs in their capacity as members of the corporation's board of directors and on the corporation's behalf appealed from the trial court's judgment dismissing their action against the defendants, three members of the corporation's board of directors, for lack of subject matter jurisdiction on the basis that the individual plaintiffs lacked standing to bring the action. The plaintiffs claimed that the court improperly dismissed the action, which sought declaratory and injunctive relief pursuant to the Connecticut Revised Nonstock Corporation Act (§ 33-1000 et seq.), because the individual plaintiffs have standing pursuant to statute (§ 33-1089 (a)). *Held*:

The trial court improperly dismissed the plaintiffs' action for lack of subject matter jurisdiction, as the individual plaintiffs were aggrieved persons within the meaning of § 33-1089 (a) and, therefore, had standing to bring the action.

Argued June 4—officially released September 2, 2025

*Procedural History*

Action for injunctive and declaratory relief with respect to the corporate governance of the named plaintiff and the validity of certain actions of its board of directors, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket, where Joel Cruz et al. were added as plaintiffs; thereafter, the court, *Noble, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed to this court. *Reversed*; *judgment directed*; *further proceedings*.

*Patrick M. Fahey*, for the appellants (plaintiffs).

*Linda L. Morkan*, with whom were *Kathleen E. Dion* and, on the brief, *Jenna M. Scoville*, for the appellees (defendants).

*Opinion*

WESTBROOK, J. In this corporate governance dispute, the plaintiffs, Charter Oak Health Center, Inc. (Charter Oak), and Adrian Wood, Joel Cruz, Martin John, Eileen Alvarado, and Leslie Arroyo, in their capacity as members of the board of directors of Charter Oak and on behalf of Charter Oak, appeal from the judgment of the trial court dismissing their action against the defendants, Veronica Barcelona, Claudius McNish, and Lolita Young, for lack of subject matter jurisdiction on the basis that the individual plaintiffs lacked standing to bring the action. The plaintiffs claim that the court improperly dismissed the action because the individual plaintiffs have standing pursuant to General Statutes § 33-1089.[1] We agree and, accordingly, reverse the judgment of the court.

The following facts, as alleged by the plaintiffs and stipulated to by the parties, and procedural history are relevant to this appeal. Charter Oak is a federally qualified health center that serves underserved areas by providing outpatient primary care, specialty medical services, behavioral health services, and dental services. On November 15, 2023, the board of directors of Charter Oak held a regularly scheduled meeting. At that time, the nine elected members of Charter Oak's board of directors were Wood, Cruz, Alvarado, John, Arroyo, Barcelona, Joy-Lynn Hardy, McNish, and Young. Kimberly Evans, Charter Oak's general counsel, vice president, and chief of compliance and legal affairs, as well

---

[1] The plaintiffs also claim that the individual plaintiffs have standing to bring the action because (1) they are classically aggrieved, (2) Charter Oak waived the term limit provision of its bylaws, and (3) Charter Oak's bylaws do not authorize employees to remove board members. In light of our reversal on the basis that the individual plaintiffs have standing pursuant to § 33-1089 (a), we do not reach these claims.

In addition, with respect to Charter Oak, § 33-1089 (c) provides in relevant part that "[t]he corporation shall be made a party to any proceeding under this section . . . ."

as Rick Markello, Charter Oak's interim chief financial officer, were also present at the meeting. During the meeting, "Markello repeatedly expressed that, in his view, some board members were beyond the term limits set forth in the Charter Oak bylaws and could not serve as board members." Wood, the chairperson of the board of directors, stated that "the board would not address the term limits issue at that meeting, electing instead to move the question to the board's executive session."

Six days later, on November 21, 2023, Evans sent emails to Wood, Cruz, and John, each containing a letter stating that, "pursuant to Charter Oak's bylaws [he or she] had exceeded the six year term limit for service on the board of directors."[2] Later that day, Evans called Hardy and expressed her view that Wood, Cruz, and John "had been on the board for too long and were no longer board members." Evans asked Hardy to participate in a "shadow board meeting" the next day to elect a new chairperson of the board, but Hardy, believing that Wood, Cruz, and John were still legitimate members of the board of directors, "refused to participate in the board meeting . . . ." Despite Hardy's disagreement, Evans scheduled a meeting for the next day.

After her conversation with Evans, Hardy informed Wood that Markello, Evans, and Timothy Powers, Charter Oak's vice president of corporate compliance, were "trying to seize control of the board of directors by assembling a rogue board and electing a new chairperson and [chief executive officer (CEO)]." In response, Wood, Cruz, John, and Hardy held a meeting and voted to offer a permanent position to Thomas Maynor, Charter Oak's interim CEO, and to suspend Markello, Evans,

---

[2] Article four, § 2, of Charter Oak's bylaws provides in relevant part that the terms of board members "shall expire at the end of each [a]nnual [m]eeting . . . . Newly-elected [d]irectors shall hold office for a term of two . . . years or until their successors [are] elected, but in no event shall a [d]irector hold office for more than three . . . consecutive terms."

and Powers. They also voted to remove the term limit provision from Charter Oak's bylaws. The next day, on November 22, 2023, Maynor emailed letters to Markello, Evans, and Powers, informing them that they had been suspended.

Later that day, the defendants held a meeting at which Evans and Markello also were present. After the meeting, Markello sent an email to all Charter Oak staff, stating in relevant part: "Five of our board members had their terms expire according to our bylaws, and so they are no longer on the board. They are [the individual plaintiffs]. . . . The four remaining board members, [the defendants and Hardy] currently make up our board, however, they plan to add new board members in the near future. Three of the four remaining members of the board held a duly authorized board meeting today and voted the following: 1. To elect . . . Barcelona as the new chair. 2. To suspend the CEO search and engage a professional search firm. 3. To appoint me . . . Markello, the new interim CEO." Markello subsequently used his authority as the new interim CEO to terminate several of Charter Oak's existing consulting contracts, as well as Maynor's interim CEO contract. The board also suspended the Charter Oak email accounts of Maynor, Wood, Cruz, John, and other Charter Oak consultants, and revoked John's access to Charter Oak's financial information.

On November 27, 2023, Wood, in his capacity as a member of the board of directors of Charter Oak and on behalf of Charter Oak, filed a one count complaint against the defendants, seeking injunctive relief pursuant to the Connecticut Revised Nonstock Corporation Act, General Statutes § 33-1000 et seq. In his complaint, Wood alleged that "[t]he actions of the rogue board members constitute legally invalid *ultra vires* actions. They did not have authority to act on behalf of the

board and acted in violation of the company's bylaws, including the provisions directing notice of meetings and provisions regarding quorums for lawful action of the board." (Emphasis in original.) He also alleged that the individual plaintiffs "continue to serve as members of the board of directors until their successor[s] [are] elected." In his prayer for relief, Wood sought a declaration that the individual plaintiffs are current and legitimate members of Charter Oak's board of directors until their successors are elected and installed. He also sought a temporary restraining order (1) declaring that the individual plaintiffs are current duly elected members of Charter Oak's board of directors, (2) voiding the defendants' actions concerning the operation of Charter Oak since November 15, 2023, (3) providing the individual plaintiffs a right to an accounting of Charter Oak's finances, and (4) restoring the individual plaintiffs' access to Charter Oak's facilities and information systems. Along with the complaint, Wood filed an application for an ex parte temporary restraining order consistent with his prayer for relief, which the court denied.

On December 4, 2023, the defendants filed a motion to dismiss Wood's complaint for lack of subject matter jurisdiction. They argued that, pursuant to Charter Oak's bylaws, Wood ceased being a board member upon the expiration of his third consecutive term, and, therefore, he lacked standing to bring the action on behalf of Charter Oak. Wood filed an opposition to the defendants' motion to dismiss, arguing that he has standing to bring the action on behalf of Charter Oak because, pursuant to General Statutes § 33-1085,[3] he remains a member of Charter Oak's board of directors until his successor is elected, or, alternatively, Charter Oak

---

[3] General Statutes § 33-1085 provides in relevant part: "(e) Despite the expiration of a director's term, he continues to serve until his successor is elected and qualifies or until there is a decrease in the number of directors."

waived the term limit provision of its bylaws. In support of his opposition, Wood attached the meeting minutes from the board's annual meetings on October 26, 2022, and October 23, 2019. The defendants filed a reply, arguing that, pursuant to General Statutes § 33-1001,[4] Charter Oak's bylaws, not § 33-1085, control whether Wood remained a board member after the expiration of his third consecutive term.

On December 28, 2023, the court, *Bellis*, *J.*, issued an order transferring the case to the complex litigation docket. On January 12, 2024, pursuant to Practice Book § 10-59, Wood filed an amended complaint in which he added as plaintiffs Cruz, John, Alvarado, and Arroyo, the other Charter Oak board members who allegedly were wrongfully removed.[5] On February 23, 2024, pursuant to Practice Book § 10-60, the plaintiffs moved for

---

[4] General Statutes § 33-1001 provides in relevant part: "(a) Sections 33-1000 to 33-1290, inclusive, shall be so construed as to provide for a general corporate form for the conduct of lawful activities with such variations and modifications from the form so provided as the interested parties may agree upon . . . . Whether or not a section of said sections contains the words 'unless the certificate of incorporation or bylaws otherwise provide', or words of similar import, no provision of a certificate of incorporation or bylaw shall be held invalid on the ground that it is inconsistent with such section unless such section expressly prohibits variations therefrom, or prescribes minimum or maximum numerical requirements, or a substantial interest of the state or third parties is adversely affected thereby.

"(b) If the certificate of incorporation, in effect on January 1, 1997, of a corporation without capital stock . . . contains any provision contrary to, inconsistent with or in addition to any provision of sections 33-1000 to 33-1290, inclusive, but which provision was permitted to be contained in such certificate pursuant to the provisions of applicable law as in effect prior to January 1, 1997, the provisions contained in such certificate shall govern such corporation and the provisions of said sections shall not be held or construed to alter or affect any provision of the certificate of incorporation of such corporation inconsistent herewith . . . ."

[5] The defendants have not raised the issue of whether the additional plaintiffs were properly added. Whether the additional plaintiffs were properly added does not change our analysis and conclusions because the absence of the additional plaintiffs would not deprive this court or the trial court of jurisdiction over the controversy.

leave to file a second amended complaint. The trial court granted that request over the defendants' objection.[6]

On January 26, 2024, the parties filed a stipulation regarding the dates that the individual plaintiffs, the defendants, and Hardy served on Charter Oak's board of directors. The stipulation provides that (1) between 2012 and 2023, John was elected and reappointed to serve seven consecutive terms; (2) between 2013 and 2023, Wood was elected and reappointed to serve six consecutive terms; (3) between 2013 and 2023, Cruz was elected and reappointed to serve six consecutive terms; (4) between 2014 and 2022, Arroyo was elected and reappointed to serve five consecutive terms; (5) between 2016 and 2022, Alvarado was elected and reappointed to serve four consecutive terms; (6) between 2019 and 2022, McNish and Young were elected and reappointed to serve three consecutive terms; (7) on August 23, 2023, Barcelona was elected to serve her first term; and (8) on October 25, 2023, Hardy was elected to serve her first term. The stipulation additionally provides that John, Wood, and Cruz had been

[6] The court, in its memorandum of decision dismissing the action, stated that, although "the complaint [that] was in effect at the time of filing of the motion to dismiss was the complaint that was filed on November 27, 2023 . . . no substantive changes have been made to the complaint, [and, therefore], the court treats the February 23, 2024 complaint as the operative complaint." Because the trial court is required to decide jurisdictional issues before addressing a request to amend the complaint; see, e.g., *Bellman* v. *West Hartford*, 96 Conn. App. 387, 392, 900 A.2d 82 (2006); and the defendants filed an opposition to the plaintiffs' request for leave to file a second amended complaint, the court should not have granted the plaintiffs' request before ruling on the motion to dismiss. This error, however, does not impact our resolution of this appeal.

The first amended complaint, unlike the second amended complaint, was filed *as of right* pursuant to Practice Book § 10-59 and, therefore, was a permissible amendment notwithstanding the fact that the defendants had already moved to dismiss to action. See *Dauti* v. *Stop & Shop Supermarket Co.*, 90 Conn. App. 626, 640, 879 A.2d 507, cert. denied, 276 Conn. 902, 884 A.2d 1025 (2005).

elected and reappointed to serve two year terms on October 25, 2023, and Arroyo and Alvarado had been elected and reappointed to serve two year terms on October 26, 2022.

Following a remote hearing,[7] on May 28, 2024, the court, *Noble, J.*, issued a memorandum of decision dismissing the action for lack of subject matter jurisdiction. In its memorandum of decision, the court first determined that Charter Oak's bylaws, rather than § 33-1085, govern the issue of whether the individual plaintiffs remained board members after the expiration of their third consecutive term. The court stated: "[T]he defendants rely on the bylaws for the proposition that the [individual] plaintiffs have exceeded their term limits and can no longer be members of the board of directors after they have exceeded three consecutive terms. The plaintiffs, however, argue that § 33-1085 applies because the bylaws are silent as to what occurs after a director's term expires. . . . The court finds that § 33-1001 is unambiguous in that it allows a corporation to deviate from the Connecticut [Revised] Nonstock Corporation Act statutory requirements. Moreover, article five of Charter Oak's articles of incorporation . . . states that 'the method of election of the [b]oard of [d]irectors and all other activities and business shall be managed as provided in the [bylaws].' . . . Charter Oak's articles of incorporation thus make it clear that the bylaws govern all activities of Charter Oak. Accordingly, the court finds that § 33-1085 is inapplicable in the present case because article four, § 2, of the bylaws varies permissibly from § 33-1085 (e) pursuant to § 33-1001." (Citation omitted.)

---

[7] The record indicates that the court held a remote hearing regarding the defendants' motion to dismiss on January 16, 2024. The parties, however, have not provided us with the transcript of such hearing and, instead, submitted a certificate indicating that no transcript is necessary. See Practice Book § 63-4 (a) (3).

The court then determined that, pursuant to Charter Oak's bylaws, the individual plaintiffs were no longer members of the board of directors. It stated: "The court finds that, under the bylaws, the [individual] plaintiffs are no longer members because they have exceeded the bylaws' term limits. Under article four, § 2, of Charter Oak's bylaws, after the [individual] plaintiffs completed their first three consecutive terms, they were no longer eligible to be members of the board of directors. They therefore lack standing to assert claims concerning Charter Oak's corporate governance on their own behalf and, as former board members, have no authority to initiate a lawsuit on Charter Oak's behalf." (Footnote omitted.) The court further determined that "this application of the bylaws would not result in absurd or unworkable results" because the bylaws allow the board of directors to call special meetings to add members so that it may maintain nine directors as required by the bylaws. The court also found that the staggered nature of the directors' terms "is designed to prevent the board from lacking [a] quorum and the requisite number of directors."

The court next addressed the plaintiffs' argument that Charter Oak had waived the term limit provision of its bylaws. In rejecting that argument, the court stated: "[T]he plaintiffs have not put forth any evidence beyond the mere assertion that these provisions were waived to demonstrate that the board of directors actually intended to waive the term limitations as set forth in the bylaws. Therefore, the plaintiffs have failed to satisfy their burden of proving subject matter jurisdiction . . . . Moreover . . . the bylaws could have been amended . . . to remove the term limitations had it actually been the intention of the board of directors to remove term limits. . . . The actions taken by the [individual] plaintiffs on November 21, 2023, to remove the term limitation provision are not valid because they

were no longer members in good standing of the board of directors."

Lastly, the court addressed the plaintiffs' argument that the individual plaintiffs have standing pursuant to § 33-1089 (a)[8] because they are board members and/or aggrieved persons. The court stated: "[T]he [individual] plaintiffs are no longer members of the board of directors. Accordingly, they are not members or directors as required by § 33-1089 (a). . . . The [individual] plaintiffs, as former board of directors members who have exhausted their three consecutive terms, are no longer permitted to serve on the board of directors absent a change in the bylaws and would not be impacted by an appointment of new directors in a way that is distinct from any member of the public. Accordingly, they do not have standing under § 33-1089."

The court concluded: "[T]he [individual] plaintiffs lack standing because they are no longer board members pursuant to article four, § 2, of the bylaws, which varies permissibly from § 33-1085 (e) pursuant to § 33-1001, and, thus, they lack the authority necessary to bring this action. Accordingly, the court lacks subject matter jurisdiction." The court, therefore, rendered a judgment of dismissal. This appeal followed.

On appeal, the plaintiffs claim that the court improperly dismissed their action for lack of subject matter jurisdiction because the individual plaintiffs have standing pursuant to § 33-1089 (a). Specifically, the plaintiffs

---

[8] General Statutes § 33-1089 (a) provides in relevant part: "Upon application of any member, director or person aggrieved, the superior court . . . shall forthwith hear and determine the validity of any election or appointment of any director or officer of a corporation and the right of any person to hold such office, and, if any such office is claimed by more than one person, determine the person entitled thereto, and to that end shall determine the voting and other rights of persons claiming the same in respect of such election or appointment, and confirm the election or appointment, order a new election as provided in section 33-1063 or direct other relief as may be just and proper."

argue that the individual plaintiffs are aggrieved within the meaning of that statute and are entitled to a determination of their rights to hold office. We agree.

We begin by setting forth the relevant legal principles and standards that govern our review of this claim. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . .

"Our courts have acknowledged that [t]rial courts addressing motions to dismiss for lack of subject matter jurisdiction . . . may encounter different situations, depending on the status of the record in the case. . . . [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed. When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in

support of the motion to dismiss . . . [or] other types of undisputed evidence . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . .

"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. . . . One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Citations omitted; internal quotation marks omitted.) *Fountain of Youth Church, Inc.* v. *Fountain*, 225 Conn. App. 856, 867–69, 317 A.3d 106 (2024).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Importantly, [o]ur standing jurisprudence consistently has embodied the notion

that there must be a colorable claim of a direct injury to the [complaining party], in an individual or representative capacity. . . . Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties." (Citation omitted; internal quotation marks omitted.) *Pasciolla* v. *Pasciolla*, 230 Conn. App. 174, 182, 330 A.3d 222 (2025).

"It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features." (Internal quotation marks omitted.) *Perry* v. *Perry*, 312 Conn. 600, 620, 95 A.3d 500 (2014). "Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 487, 815 A.2d 1188 (2003).

"In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . [Stated differently, the] plaintiff must be within the zone of interests protected by the statute." (Internal quotation marks omitted.) *Saunders* v. *Briner*, 334 Conn. 135, 157, 221 A.3d 1 (2019); see also *7 Germantown Road, LLC* v. *Danbury*,

351 Conn. 169, 180, 329 A.3d 927 (2025) ("[w]ith statutory standing, we generally look at whether a person falls within the class of persons that the legislature has authorized to bring an action"). The issue of whether § 33-1089 authorizes the individual plaintiffs to bring an action challenging their removal "presents a question of statutory interpretation, over which we exercise plenary review, guided by well established principles regarding legislative intent."[9] *Saunders* v. *Briner*, supra, 157.

We begin with the language of § 33-1089 (a), which provides in relevant part: "Upon application of *any member, director or person aggrieved*, the superior court . . . shall forthwith hear and determine the validity of any election or appointment of any director or officer of a corporation and the right of any person to hold such office, and, if any such office is claimed by more than one person, determine the person entitled thereto . . . ." (Emphasis added.) The plain language of the statute thus indicates that a "member" or a "director" of a corporation, as well as any other "person aggrieved," may seek a determination in the Superior Court concerning the validity of any election or appointment of any director or officer of a corporation and the right of any person to hold office. General Statutes § 33-1089 (a). Our review of the record that was before the court when it decided the defendants' motion to dismiss

---

[9] "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

leads us to conclude that the individual plaintiffs were aggrieved persons within the meaning of § 33-1089 and, therefore, had standing to bring the present action.[10]

It is undisputed that the individual plaintiffs had been elected and reappointed to serve on Charter Oak's board of directors in either October, 2022, or October, 2023, and, therefore, were in the midst of two year terms in November, 2023, when they were informed that they were no longer board members. It also is undisputed that a majority of the elected board members did not vote to replace the individual plaintiffs as board members at the time the plaintiffs commenced the present action. The plaintiffs brought the present action seeking, inter alia, a declaration that the individual plaintiffs have the right to hold office as members of the board of directors because (1) pursuant to Charter Oak's bylaws, they are holdover board members until their successors are elected or, alternatively, (2) Charter Oak waived the term limit provision of its bylaws by electing and reappointing the individual plaintiffs to serve more than three consecutive terms. It is clear, therefore, that the individual plaintiffs fall squarely

---

[10] This interpretation is consistent with our Superior Court's decisions concerning actions brought pursuant to § 33-1089. See, e.g., *Sowell* v. *DiCara*, Docket No. CV-12-6016087-S, 2014 WL 7272522, *2 (Conn. Super. November 17, 2014) ("[§ 33-1089] speaks to the validity of an election [and] is specifically enacted to allow those persons who are aggrieved by the election process and directly impacted by the election to have the court review the process and provide relief" (emphasis omitted)); *Fosco* v. *Hickory Woods Assn.*, Docket No. CV-10-6006457-S, 2010 WL 2764707, *2 (Conn. Super. June 1, 2010) (plaintiff who lost corporation's board of directors election successfully brought action under § 33-1089 challenging voting procedure used in election); *Orange Landing Condominium Assn.* v. *Paul*, Docket No. CV-03-0476905-S, 2004 WL 2284302, *1 (Conn. Super. September 20, 2004) (former members of corporation's board of directors brought action under § 33-1089 to challenge validity of special election and actions of board after election); *Royce* v. *Willowbrook Cemetery Assn., Inc.*, Docket No. CV-01-0185694-S, 2002 WL 31500984, *3 (Conn. Super. October 21, 2002) ("§ 33-1089 provides the exclusive remedy for determining validity of any election of any officer of a corporation").

within the zone of interests that the statute is designed to protect. The trial court, in concluding that the individual plaintiffs were no longer board members, improperly reached the merits of the underlying dispute rather than the threshold question of whether the individual plaintiffs had statutory standing to seek the very sort of determination § 33-1089 (a) is intended to afford.

In reaching the merits of the dispute and concluding as it did that the individual plaintiffs are no longer board members, the court improperly determined that Charter Oak's bylaws unambiguously prohibited the individual plaintiffs from serving as holdover board members and that the plaintiffs failed to meet their burden of proving that Charter Oak waived the term limit provision of its bylaws when the board elected the individual plaintiffs to serve more than three consecutive terms.

We begin with the plaintiffs' contention that the court improperly concluded that the bylaws unambiguously prohibited the individual plaintiffs from serving as holdovers following the expiration of their third terms. The court determined that, "[u]nder article four, § 2, of Charter Oak's bylaws, after the [individual] plaintiffs completed their first three consecutive terms, they were no longer eligible to be members of the board of directors." The plaintiffs, however, argue that the bylaws do not prohibit board members from serving in a holdover capacity after the expiration of a member's third consecutive term. Specifically, the plaintiffs contend that, putting the issue of waiver aside, the term limit provision, when read in context, only prohibits board members from being elected to a fourth consecutive term, but does not prohibit a board member from serving as a holdover until a successor is elected following the expiration of a board member's third consecutive term. The defendants, on the other hand, contend that the court properly determined that the provision of the bylaws stating that "in no event shall a [d]irector hold

office for more than three . . . consecutive terms" unambiguously precludes a board member from serving once his or her third consecutive term expires.

"Courts construe bylaws according to the general rules of contract construction or statutory construction. . . . Generally, the rules governing the interpretation of contracts and statutes require courts to defer to the plain and ordinary meaning of language, unless such language gives rise to ambiguity." (Citations omitted; internal quotation marks omitted.) *Foundation for the Advancement of Catholic Schools, Inc.* v. *Blair*, 230 Conn. App. 793, 809–10, 332 A.3d 990, cert. denied, 351 Conn. 927, 333 A.3d 1108 (2025). "If the language of the contract [or statute] is susceptible to more than one reasonable interpretation, the contract [or statute] is ambiguous." (Internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 192, 112 A.3d 144 (2015). "When the language of a contract [or statute] is ambiguous, the determination of [its intended meaning] is a question of fact," and "[e]xtrinsic evidence is always admissible . . . to explain [the] ambiguity . . . ." (Internal quotation marks omitted.) Id. Under the general rules of contract and statutory construction, the threshold question of whether the language of the bylaws is itself ambiguous is a question of law over which our review is plenary. See, e.g., *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010); *McTiernan* v. *McTiernan*, 164 Conn. App. 805, 824, 138 A.3d 935 (2016).

Article four, § 2, of Charter Oak's bylaws provides in relevant part: "Newly-elected [d]irectors shall hold office for a term of two . . . years *or until their successors* [are] *elected*, but *in no event* shall a [d]irector hold office for more than three . . . consecutive terms." (Emphasis added.) We conclude that the relevant language of article 4, § 2, of Charter Oak's bylaws is open to more than one reasonable interpretation with respect

to whether a board member may serve in a holdover capacity upon the expiration of a third consecutive term. The language providing that "in no event" shall directors hold office for more than three consecutive terms can reasonably be read to mean that directors cease being members in good standing upon the expiration of their third consecutive term. The language providing that directors shall hold office "until their successors [are] elected," however, can reasonably be read to mean that a director whose third consecutive term has expired may not be *elected* for an additional consecutive term but nevertheless remains a holdover board member until his or her successor is elected. Accordingly, the individual plaintiffs have colorable claims to board membership, which is all that is required in order to prove that they are aggrieved persons for purposes of § 33-1089 (a). See *Fort Trumbull Conservancy* v. *New London*, 265 Conn. 423, 432, 829 A.2d 801 (2003). The court should have denied the motion to dismiss on that basis and proceeded to a trial on the merits during which it could consider extrinsic evidence to discern the meaning of the bylaws. See *Parisi* v. *Parisi*, 315 Conn. 370, 373, 107 A.3d 920 (2015); see also id., 386 (concluding that "case must be remanded to the trial court to resolve the ambiguity in the parties' separation agreement through a determination of their intent after consideration of all available extrinsic evidence and the circumstances surrounding the entering of the agreement").

In addition to determining that the individual plaintiffs were no longer board members pursuant to the bylaws, the trial court also determined that the plaintiffs' claim that Charter Oak had waived its term limit provision by electing the individual plaintiffs to more than three consecutive terms failed. In reaching that conclusion, the court stated that "the plaintiffs *have not put forth any evidence* beyond the mere assertion

that these provisions were waived to demonstrate that the board of directors *actually intended* to waive the term limitations as set forth in the bylaws." (Emphasis added.)

As it did with respect to the plaintiffs' claim that the individual plaintiffs were holdover board members, the court conflated the issue of whether the individual plaintiffs had standing to pursue their waiver claim with the issue of whether the plaintiffs ultimately would prevail on the merits of that claim. At the motion to dismiss stage, the plaintiffs were required to prove only that they had a colorable claim that Charter Oak had waived its bylaws and that the individual plaintiffs therefore were aggrieved persons for purposes of § 33-1089 (a). See *Fort Trumbull Conservancy* v. *New London*, supra, 265 Conn. 432.

"It is well established that [w]aiver is a question of fact." (Internal quotation marks omitted.) *Worth Construction Co.* v. *Dept. of Public Works*, 139 Conn. App. 65, 68, 54 A.3d 627 (2012). "[W]aiver is the intentional relinquishment or abandonment of a known right or privilege. . . . [T]o determine the presence of waiver, there must be evidence of intelligent and intentional action by the petitioner of the right claimed to be waived. . . . *Each case should be considered upon the particular facts and circumstances surrounding that case*, including the background, experience and conduct of the party that is waiving its rights." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 70–71.

The amended complaint and stipulation supported the plaintiffs' claim that, notwithstanding the provision of the bylaws prohibiting board members from holding office for more than three consecutive terms, each of the individual plaintiffs was elected to a term exceeding that limitation. On the basis of that record, we conclude

that the plaintiffs produced sufficient evidence to prove a colorable claim of waiver, and, therefore, the individual plaintiffs are aggrieved persons within the meaning of § 33-1089 (a). The court should have denied the motion to dismiss on that basis and proceeded to hold a trial on the merits of that claim during which the parties would have had an opportunity to present additional evidence in support of their competing claims.

In sum, we conclude that the individual plaintiffs have standing as aggrieved persons pursuant to § 33-1089 (a), and, therefore, the court should have denied the defendants' motion to dismiss.

The judgment is reversed and the case is remanded with direction to deny the defendants' motion to dismiss and for further proceedings.

In this opinion the other judges concurred.